```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT BLUEFIELD
```

CURD MINERALS, LLC,
A Virginia limited
liability company,

    Plaintiff,

v.                        CIVIL ACTION NO. 1:22-00113

DIVERSIFIED PRODUCTION, LLC,
A Pennsylvania limited liability
company,

    Defendant.

### MEMORANDUM OPINION AND ORDER

This matter is before the court on the court's sua sponte consideration of subject-matter jurisdiction. For the reasons explained below, this case is **REMANDED** to the Circuit Court of McDowell County, West Virginia.

### I.    Background

This case arises from a dispute over the ownership of the oil-and-gas estate underlying two wells in McDowell County. See Compl., ECF No. 1-1. Plaintiff Curd Minerals, LLC ("Curd") seeks to quiet title to the oil-and-gas estate underlying the wells, and asserts claims of trespass, conversion, and ejectment against defendant Diversified Production, LLC ("Diversified"), which is the lessee of the disputed oil-and-gas rights. See id.

Diversified removed this action to this court from the Circuit Court of McDowell County based on diversity jurisdiction

on March 3, 2022. See Notice of Removal, ECF No. 1. Diversified also filed counterclaims to quiet title to the disputed property under two theories. It claimed that it produced the oil-and-gas under a valid lease or, in the alternative, that it had adversely possessed the disputed property from Curd. See Answer & Countercl., ECF No. 4 at 11-12.

    Curd did not contest removal, and the case proceeded in due course. The court eventually had before it cross-motions for summary judgment that appeared ripe and ready for adjudication. See ECF Nos. 78, 91. Curd asked the court to declare it the owner of the property under a 1931 tax deed acquired by its predecessor. See ECF No. 92. Diversified asked the court to invalidate Curd's 1931 deed, arguing that it conveyed no interest because the prior owners' property rights were automatically forfeited to the state under West Virginia's repealed forfeiture-for-nonentry provision of the state Constitution, W. Va. Const. art. XIII, § 6 (repealed 1992). See ECF No. 84 at 7-11. Diversified also asked the court to grant summary judgment, arguing that Curd had not offered evidence that the disputed wells were on the property described in its 1931 tax deed. See id. at 16-24. Additionally, Diversified argued that it "has shown that . . . there is a factual basis for summary judgment that Diversified's adverse possession of

2

the oil and gas through production of the Diversified Wells has ripened into title thereto." See ECF No. 93 at 5-6.

When reviewing these competing claims of title to the disputed oil-and-gas estate, one glaring issue appeared to the court: The purported owners of the property, at least according to Diversified, are not parties to the suit.

Diversified contends that the owners of the disputed property are the "Dennis Heirs," whose predecessors leased more than 6,000 acres of oil-and-gas rights to Diversified's original predecessor, the Hope Natural Gas Company, pursuant to a 1961 lease agreement. See ECF No. 41-2 at 35-48. The Dennis Heirs consist of the individuals who acquired the interests of the following original lessors under the 1961 lease: Rose L. Dennis, Chloe V. Smith, E.E. Smith, Percy V. Dennis, Maurine M. Dennis, John W. Dennis, Marion M. Dennis, W. Clyde Dennis, Bessie B. Dennis, Ruth D. Scott, Henry Scott, Eula B. Dennis, and W. Clyde Dennis. See id. Diversified, since its predecessor drilled the disputed wells in 2006, has paid royalties to the Dennis Heirs as lessors of the oil-and-gas rights. See ECF No. 93-1.

The absence of the Dennis Heirs from this suit makes the claims of Curd and Diversified extraordinary. Curd asks the court to quiet title to property without joining the purported title holders to the suit. And Diversified asserts that it has

3

gained title to the oil and gas by acting under the "color of title"—despite leasing the rights from the Dennis Heirs.  Under these theories, the Dennis Heirs could be deprived of their ownership interests without notice or the opportunity to be heard.

When the court realized this apparent defect in the proceedings, it ordered Curd and Diversified to brief the issue of whether all necessary and indispensable parties had been joined under Rule 19 of the Federal Rules of Civil Procedure.  See ECF No. 104.  Both parties filed response briefs.  Curd argued that the Dennis Heirs are not necessary parties because, according to Curd, it owns the property and the Dennis Heirs have never claimed ownership of it.  See ECF No. 106.  Diversified argued that the Dennis Heirs are only necessary and indispensable parties if the court rules against Diversified on its motion for summary judgment.  See ECF No. 107 at 2-3.  Diversified also insisted that "given the substantial investment of time, effort and resources by the parties and the substance of this case, the threshold issues [presented in Diversified's motion for summary judgment] should be addressed by this court prior to turning to a potential Rule 19 issue that may not materialize."  Id. at 3.

The court rejected these arguments and deemed the Dennis Heirs necessary parties because of their ownership interests in

the disputed property.  See ECF No. 110.  The court, therefore, ordered Curd to join the Dennis Heirs to the action under Rule 19.  See id.  At the time, the court was not aware of the domicile of any of the Dennis Heirs, as the parties were unable to provide that information at a status conference held on July 15, 2024.  See ECF No. 109.

Curd joined the Dennis Heirs through an amended complaint filed on August 16, 2024.  See Am. Compl. at ¶¶ 1-19, ECF No. 111.  Several of the Dennis Heirs destroy complete diversity among the parties.  At least one member of Curd (a limited liability company) is domiciled in Virginia, (see Curd Dep. Tr. 15:3-18:24), and according to the amended complaint, defendants Michael Lee Dennis, Thomas Kemper Steele, and Robert J. Dennis are also domiciled in Virginia.[1]  See Am. Compl. at ¶¶ 12, 15, 17, ECF No. 111.

Because the inclusion of these necessary parties destroys subject-matter jurisdiction, and the court did not know that the joinder of the defendants would destroy subject-matter jurisdiction at the time it entered its order requiring their joinder, the court will now reconsider that order.

---

[1] Based on the evidence before the court, it appears that, of the Dennis Heirs, Michael Lee Dennis and Robert J. Dennis receive the highest percentage of net revenue from the production of the wells.  See ECF No. 93-1.

5

## II.  Legal Standard

Courts may reconsider a prior joinder decision when joinder was granted without knowledge that the new defendants would destroy subject-matter jurisdiction: "[W]hen a trial court grants a plaintiff leave to amend the complaint by naming additional defendants, and the plaintiff fails to inform the court that one or more of those defendants will destroy diversity, the trial court may reconsider its earlier decision." Messinger v. Window World, Inc., No. 2:18-cv-00912, 2019 WL 124833, at *1 (S.D.W. Va. Jan. 7, 2019) (quoting Bailey v. Bayer CropScience L.P., 563 F.3d 302, 307 (8th Cir. 2009)); see also Ramos v. Farmers Ins. (NWL), 586 F. Supp. 3d 968, 970 (8th Cir. 2022) ("[A] trial court has 'discretionary authority to reconsider and reverse its previous joinder decision' where a plaintiff fails to inform the court that one or more of the new defendants will destroy diversity.") (quoting Bailey, 563 F.3d at 307).

When reconsidering a joinder decision, the court turns to Rule 19 of the Federal Rules of Civil Procedure.  There are two inquiries under Rule 19:  whether a "nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)." Dean v. City of Kenova, No. 3:21-0197, 2022 WL 1157502, at *2 (S.D.W. Va. Apr. 19, 2022)

(quoting Gunvor SA v. Kayablian, 948 F.3d 214, 218 (4th Cir. 2020)).  If a non-diverse party is necessary but dispensable, the court may proceed without joining that party to the action.  See Crockett v. Alsirt, No. 7:18-1210-JFA-KFM, 2018 WL 5276269, at *3 (D.S.C. Oct. 24, 2018) (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989)).  When the non-diverse party is, on the other hand, necessary and indispensable, the court generally must dismiss the action.  See Dean, No. 3:21-0197, 2022 WL 1157502, at *2.  However, there is a third option for cases brought under the court's removal jurisdiction:  remand to state court.

The removal statute, 28 U.S.C. § 1447(e), provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  This adds an additional layer to the Rule 19 inquiry:

> Section 1447(e) and Rule 19 in combination expand the district court's options for dealing with an attempt to join a necessary, non-diverse party where the case has been removed to federal court.  The court may: (1) deem the party "indispensable" and dismiss the case; (2) deem the party not indispensable and continue its jurisdiction over the lawsuit without joinder; or (3) allow joinder and remand the case to state court.

Yniques v. Cabral, 985 F.2d 1031, 1035 (9th Cir. 1993); see also

7

Trombino v. Transit Cas. Co., 110 F.R.D. 139, 148-50 (D.R.I. 1986). Under the third option, "in the case where remand is based on a lack of subject matter jurisdiction, the remand order may be entered at any time, for jurisdiction goes to the very power of the court to act." Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)). "In addition, because the lack of subject matter jurisdiction may be noticed by the district court sua sponte or by any party, see Arbaugh v. Y & H Corp., 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Caterpillar Inc. v. Lewis, 519 U.S. 61, 69, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996), the court may enter a remand order sua sponte." Id.

Federal courts have original jurisdiction over civil actions when the amount in controversy exceeds $75,000 and the action is between citizens of different states. See 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant. See Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members. Gen. Tech. Applications, Inc. v. Exro Ltd., 388 F.3d 114, 121 (4th Cir. 2004). The citizenship

of an individual is the state the individual considers his or her permanent home. See Gambell v. Titus Tranp. Servs., LLC, 668 F. Supp. 3d 419, 424 (E.D. Va. 2023) (citing Gambelli v. United States, 904 F. Supp. 494, 496 (E.D. Va. 1995)).

### III. Discussion

The court deemed the Dennis Heirs necessary parties in its prior order requiring their joinder. See ECF No. 110. The court has since learned that their inclusion destroys diversity. Therefore, the court must address the second prong of the Rule 19 analysis and determine whether they are indispensable parties.

If they are dispensable, the court may deny their joinder and proceed without them. If they are indispensable, however, the court may either dismiss the action or remand it to state court. Because dismissal is a drastic remedy, the court will consider only the other two options: continuing without the non-diverse Dennis Heirs or remanding this action to state court.

Remand is the appropriate outcome in this case; the non-diverse Dennis Heirs are indispensable parties. A party is indispensable if the court determines in equity or good conscience that the action cannot proceed without them. See Home Buyers Warranty Corp. v. Hanna, 750 F.3d 427, 435 (4th Cir. 2014) (quoting Fed. R. Civ. P. 19(b)). Rule 19(b) contains four

9

factors for courts to consider when determining whether non-diverse defendants are indispensable. See id.

First, courts determine "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." Fed. R. Civ. P. 19(b)(1). Second, the courts consider "the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures[.]" Id. at (2). Third, courts assess "whether a judgment rendered in the person's absence would be adequate[.]" Id. at (3). Finally, courts determine "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder[.]" Id. at (4).

"While these factors are guidelines in determining whether a necessary party is indispensable, they are not inflexible benchmarks." Trombino, 110 F.R.D. at 143 (quoting Soar v. Nat'l Football League Players' Ass'n, 65 F.R.D. 531, 536 (D.R.I. 1975)). "At bottom, the quintessential tests are 'pragmatism,' and 'equity and good conscience.'" Id. (cleaned up) (citing Rousseau v. U.S. Tr. Co. of N.Y., 422 F. Supp. 447, 451 (S.D.N.Y. 1976)).

With Rule 19's considerations in mind, courts in this district have concluded that all persons with a right or interest in disputed property are both necessary and

10

indispensable parties: "'When a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue' are required parties under Rule 19." Folse v. Am. Elec. Power Corp., No. 2:23-cv-00201, 2024 WL 1154035, at *4 (S.D.W. Va. Feb. 22, 2024) (quoting Johnson v. James B. Nutter & Co., 438 F. Supp. 3d 697, 708 (S.D.W. Va. 2020)) Report and Recommendation adopted by No. 2:23-cv-00201, 2024 WL 1147790, at *1 (S.D.W. Va. Mar. 15, 2024). This applies in the context of disputed mineral rights.

The Supreme Court of Appeals of West Virginia has held that purported mineral owners are necessary and indispensable parties to actions determining the scope of rights or interest in the mineral rights. See Orville Young, LLC v. Bonacci, 866 S.E.2d 91, 95 n.2, 97 (W. Va. 2021). That court follows the same rationale as courts in this district: "When a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue are indispensable parties to the proceeding. Any order or decree issued in the absence of those parties is null and void." Id. (quoting Syl. Pt. 2, O'Daniels v. City of Charleston, 490 S.E.2d 800 (W. Va. 1997)).

This court addressed a similar remand question arising from a mineral rights dispute in Martin v. A.I.O Holdings, LLC, No.

11

2:09-0371, 2009 WL 4666456, at *1 (S.D.W. Va. Dec. 3, 2009).  In that case, landowners filed suit to quiet title to mineral rights underlying three oil-and-gas wells they believed to be on their property.  See id. at *1.  They named as defendants the lessee of the mineral rights, which operated the wells, and "the unknown heirs, successors and assigns" of an apparent former owner of the mineral rights, who had not collected royalties from the wells and had a far more attenuated connection to the mineral rights than the Dennis Heirs do in this case.  See id. at *2.  Several of the heirs destroyed complete diversity with the plaintiffs.  See id. at *2-4.  Even so, the lessee removed the case to federal court claiming that the heirs were fraudulently joined and not necessary parties.  See id.  However, this court deemed the heirs necessary parties and remanded the action to state court.  See id. at *3.  The court relied on the well-established rule for property disputes, which provides that "[i]n a suit to cancel a cloud upon the title to real estate, all parties who have or claim any interest, right, or title under the instrument, or instruments, of writing sought to be cancelled, should be made parties defendant."  See id. at *3 (quoting Syl. Pt. 1, Bonafede v. Grafton Feed & Storage Co., 94 S.E. 471 (W. Va. 1917)).

   Remand is also the correct procedure in this case.  Under West Virginia law, all persons with an interest in real property

must be made defendants to an action to quiet title.  The Dennis Heirs have an interest in the disputed mineral estate because they are the purported owners of it and lease the mineral rights to Diversified.  If the heirs in <u>Martin</u> - who had a more remote relationship to the disputed property in that case - were necessary parties, so too are the Dennis Heirs who have an undeniable interest in the outcome of this case.

Each of the Dennis Heirs or their predecessors have collected royalties from the disputed property since 2006.  Should the court quiet title in Curd's favor, the Dennis Heirs would be deprived of future royalty payments and any other potential use of the property.  Also, they could be responsible for the repayment of royalties they collected if deemed not to be the true owners of the property.  The possible consequences could affect each Dennis Heir individually, and the court cannot in equity or good conscience proceed without them.

Furthermore, the four Rule 19 factors indicate that the non-diverse Dennis Heirs are indispensable parties.  First, the non-diverse Dennis Heirs will be prejudiced if not joined because they could be deprived of their property rights, and of all owners, two of the non-diverse Dennis Heirs have the largest interests at stake.  Second, relief cannot be fashioned to lessen the prejudice to the non-diverse Dennis Heirs.  If Curd prevails, the Dennis Heirs will be deprived of all ownership

13

rights. Third, relief rendered without the non-diverse Dennis Heirs joined would not be adequate. If Curd is deemed the rightful owner, duplicative litigation could arise over the royalties collected by the Dennis Heirs. Finally, Curd has an adequate remedy available upon remand to state court.

Diversified, in its brief addressing the Rule 19 issue, argued that the Dennis Heirs are only necessary and indispensable parties if the court were to rule against Diversified on its motion for summary judgment. Therefore, Diversified urged the court not to join them before deciding that motion. The court rejected this argument.

Diversified's motion for summary judgment goes straight to the heart of the ownership dispute, and the court refused to decide it without the Dennis Heirs, as the purported owners of the disputed property, being made parties to the suit. Diversified's approach also rests on the assumption that it would win its motion for summary judgment. However, the motion is not as clear-cut as Diversified contends.

First, Diversified asks the court to set aside a nearly one-hundred-year-old deed based on a repealed provision of the West Virginia Constitution which, according to Diversified, deprived Curd's predecessors of their property rights "by operation of law," without the need for notice, a hearing, or recorded conveyance. The argument raises obvious due process

14

concerns, and while courts have not had occasion to squarely address the question under modern notions of due process, leading scholars predict the argument would not survive constitutional muster. See John W. Fisher II, Forfeited and Delinquent Lands—The Unresolved Constitutional Issue, 89 W. Va. U. L. Rev. 961, 994-95 (1987) ("If the West Virginia forfeiture provisions were subject to a direct attack, it is reasonable to assume that the King v. Mullen decision would no longer be followed . . . . [G]iven the fact that the Auditor, acting as Commissioner of Forfeited and Delinquent Land, must have irredeemable title (i.e. absolute tile) before he can certify the land to the Deputy Commissioner for sale, it is logical to believe the court may require that due process protection be afforded before such certification can occur.").

Additionally, Diversified offers no evidence that after the property was "forfeited" for non-entry, it was sold for the benefit of the state at a circuit court proceeding:

> All lands in this State, waste and unappropriated, or heretofore or hereafter for any cause forfeited, or treated as forfeited, or escheated to the State of Virginia, or this State, or purchased by either and become irredeemable, not redeemed, released, transferred or otherwise disposed of, the title whereto shall remain in this State till such sale as is hereinafter mentioned be made, shall by proceedings in the circuit court of the county in which the lands, or a part thereof, are situated, be sold to the

15

      highest bidder.

W. Va. Const. art. XIII, § 4 (repealed 1992).  Not only does the lack of sale in this case indicate that the property was not forfeited to the state, but the post-forfeiture sale proceedings were also the only procedure that would have given the former property owners any semblance of due process under the repealed forfeiture provision of the West Virginia Constitution.  See John W. Fisher II, Delinquent and Non-Entered Lands and Due Process, 115 W. Va. U. L. Rev. 43, 48-61 (2012).  Diversified's argument is far too uncertain to be decided before joining all necessary parties.

     Second, Diversified argues that Curd has not presented evidence that the disputed wells are within the property described by Curd's deed.  However, Curd offers an expert witness who says he can prove, based on the deed description and mapping technology, that the wells are on the described property.  See Dorsey Dep. Tr. at 98:12-14, ECF No. 84-1 at 26.  This seemingly presents a disputed issue of material fact and is not an argument warranting decision before addressing the Rule 19 issue.

     Even if these arguments were clear winners, the court would not have decided them without first addressing the Rule 19 issue.  The court feared that the Dennis Heirs might destroy complete diversity, which raised jurisdictional concerns.

Subject-matter jurisdiction goes to the very power of the court to act. Therefore, the court would not decide the motion without assuring that it had jurisdiction.

This court understands that significant time and resources have been expended during this litigation. However, the court cannot act without subject-matter jurisdiction. Also, much of the time and expense will be preserved since the case is being remanded and not dismissed.

### IV. Conclusion

For the above reasons, the court **PERMITS** the joinder of the Dennis Heirs named in the amended complaint (ECF No. 111), and this action is **REMANDED** to the Circuit Court of McDowell County.

The Clerk is directed to send a copy of this Order to counsel of record.

**IT IS SO ORDERED** this 30th day of September, 2024.

ENTER:

David A. Faber
Senior United States District Judge